WILLIAM J. GOINES (SBN 061290)
ALISHA M. LOUIE (SBN 240863)
GREENBERG TRAURIG, LLP
1900 University Avenue, Fifth Floor
East Palo Alto, California 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508
Email: goinesw@gtlaw.com
       louiea@gtlaw.com

Booker T. Evans, Jr. *(Admitted Pro Hac Vice)*
GREENBERG TRAURIG, LLP
2375 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: (602) 445-8424
Facsimile: (602) 445-8100
Email: evansbt@gtlaw.com
Attorneys for Defendant Cory Gray

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND CRIMINAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CORY DEONE GRAY,<br><br>    Defendant. | No. CR 07-00717-01 CW<br><br>**SENTENCING MEMORANDUM** |

## I. INTRODUCTION

Defendant Cory Deone Gray ("Mr. Gray"), through counsel, respectfully submits this sentencing memorandum in connection with his sentencing by the Court on June 11, 2008. On January 30, 2008, Mr. Gray entered into a written plea of guilty ("Plea Agreement"), pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure. Mr. Gray pled guilty to Count One of the Indictment, bank fraud, in violation of 18 U.S.C. §§ 1344(1) and (2). The Plea Agreement provides for a total offense level of 18, adjusted three-levels for acceptance of responsibility. The final version of the Presentence Report ("PSR") prepared by U.S.

Probation Officer Specialist Charles W. Mabie, dated April 25, 2008, also sets forth the total offense level at 18 and criminal history category at I. If strictly applied, these levels result in an imprisonment range of 27 to 33 months.

Mr. Gray accepts full responsibility for his actions, and through this memorandum seeks to provide this Court with information pertinent to his sentencing and respectfully requests this Court to consider the factors enumerated in 18 U.S.C. § 3553(a).

This Court is asked to weigh Mr. Gray's conduct in attempting to improperly initiate a wire transfer against a lifetime of integrity and law abiding citizenry. Mr. Gray appears before this Court with but a single blot on an otherwise exemplary life. He has not previously suffered a conviction, he has not and does not abuse substances, and has both prior to and subsequent to the incidents, been a solid and contributing member of society. As will be discussed herein, based on the factors enumerated in 18 U.S.C. § 3553(a), imposing a sentence of no imprisonment or only a short period of imprisonment are justified given Mr. Gray's prior history, character and nature of offense.

## II. BRIEF SUMMARY OF RELEVANT FACTS

### A. A Brief History of Mr. Gray

Mr. Gray was born on June 19, 1981 in the rural community of Denton, Texas. He grew up in the Community of Caneywell and was raised by his mother, a single parent, Chris Ann Gray, and his maternal grandfather, Ernest Gray, whom Mr. Gray refers to as is "PaPa". During his childhood, Mr. Gray lived with his mother and sister, Candra Gray, in his PaPa's house. Economically, Mr. Gray's family was poor and experienced difficulties with making ends meet. At a young age, Mr. Gray assisted the family while performing chores on the farm. He followed his PaPa's lead who instilled hard work and Christian values.

At an early age, Mr. Gray became determined to obtain a better life and soon developed an interest in competitive sports. Mr. Gray was a student athlete in the Avery Independent School District, earning All-State Honors and being named Most Valuable Player his junior year. Mr. Gray's athletic abilities were apparent to his family, who made the decision to relocate the family

home to the city limits of Clarksville, Texas so that Mr. Gray could be part of a larger school district and potentially earn a basketball scholarship to college. Mr. Gray assisted his mother with paying the monthly rent through a work-study program which enabled Mr. Gray to remain a student as well as earn an income to help support his family. At an early age, Mr. Gray exhibited the discipline of being a high school student, athlete, and income provider.

In time, the sacrifices Mr. Gray and his family made were rewarded. Mr. Gray was eventually recruited by Chemeketa Community College ("Chemeketa"), located in Salem, Oregon. Although Mr. Gray had been raised in Texas his entire life, the opportunity to attend college on a basketball scholarship was one he could not pass off. Without knowing anyone in the state of Oregon, Mr. Gray relocated to Salem where he was a student-athlete. In addition, Mr. Gray continued his work-study program in order to assist with living expenses.

During Mr. Gray's first year at Chemeketa, Mr. Gray developed a talent for track and field athletics. Without having a track and field program in the Avery Unified School District, Mr. Gray never knew of his potential. Soon, however, Mr. Gray exhibited success as a track and field athlete at Chemeketa, eventually being recruited by the University of Orgeon, located in Eugene Oregon.

Upon receiving an Associates of Arts Degree from Chemeketa, Mr. Gray matriculated to the University of Oregon in the fall of 2001, with a track and field scholarship. Soon, Mr. Gray developed a friendship with Sammie Parker, a professional football athlete in the National Football League ("NFL"). Through his friendship with Mr. Parker, Mr. Gray began working in the party promotions business, as a source of income to support himself during college.

In the fall of 2003, Mr. Gray completed his studies at the University of Oregon and returned home to Texas. At the time, Mr. Gray believed he had completed all requirements toward earning a degree in Sociology. After participating in graduation commencement ceremonies, Mr. Gray subsequently learned that he was one class shy of earning his degree. To date, Mr. Gray has not returned to the University of Oregon to complete his requirements toward

earning a Bachelor of Arts degree but has plans to do so in the future. In so doing, Mr. Gray will be the first member of his family to obtain a college degree.

After returning to Texas, Mr. Gray worked in a number of positions of employment, including substitute teaching, working in sales and leasing, continuing his party promotion business and being active in his church and community. Ultimately, by 2006, Mr. Gray had developed a healthy business in the party promotion business and was working regularly with well-known establishments and celebrities in the Dallas, Texas area.

In January 2008, following Mr. Gray's arrest, Mr. Gray opened a business, Tax and Financial Solutions, located in Paris, Texas. The business is the first African-American owned and operated income tax office located in Paris. Mr. Gray utilized this opportunity to integrate his business skills with his interest in providing a necessary service to his community.

To date, Mr. Gray continues to reside in the Dallas/Ft. Worth area with his girlfriend, Vel-Sh'Ron Ortiz, whom he has been associated with for over three years. Mr. Gray maintains a loving relationship with his family and is in regular contact. Mr. Gray further continues to run both his businesses, party promotions and tax preparations.

### B.  Events Giving Rise to the Offense Conduct

As detailed in Mr. Gray's Plea Agreement, Mr. Gray, beginning in as early as September 21, 2007 and continuing until October 17, 2007, made a series of telephone calls to Fremont Bank's Call Center, located in Hayward, California. During these telephone calls, Mr. Gray posed as a Fremont Bank customer with the initials "L.A.G". Mr. Gray has admitted to making these calls without the permission of L.A.G. and with the intent of defrauding Fremont Bank and obtaining funds under the custody and control of Fremont Bank. During these calls, Mr. Gray used means of identification for L.A.G., including the use of his name, social security number, date of birth and other information used to obtain additional means of identification, including L.A.G's line of credit account number, account password, home and work telephone numbers, mother's maiden name, and other private information associated with the account and L.A.G.'s personal information. Between October 15 - 17, 2007, Mr. Gray, posing as L.A.G., used

information he had obtained from previous telephone calls with Fremont Bank to contact Fremont Bank and send fraudulent wire transfer instructions via facsimile from Phoenix, Arizona to Fremont Bank in Hayward, California. Through the fraudulent instructions, which Mr. Gray represented to be from L.A.G., Mr. Gray requested the transfer of funds in the amount of $376,978.00 from L.A.G.'s Fremont Bank line of credit account to a SunTrust Bank account in the name of "Certified Title Company".

### III. THE COURT SHOULD CONSIDER FACTORS ENUMERATED UNDER 18 U.S.C. § 3553(A), IMPOSING A SENTENCE OF NO IMPRISONMENT OR ONLY A SHORT PERIOD OF IMPRISONMENT

As this Court is aware, on January 12, 2005, the Supreme Court of the United States handed down its decision in the consolidated cases of *United States v. Booker* and *United States v. Fanfan*, 543 U.S. 220, 125 S.Ct. 738, 160 L.ED.2D. 2d 621 (January 12, 2005). In summary, the Supreme Court held that the Federal Sentencing Guidelines violated the 6th Amendment and went on to strike language from the Sentencing Reform Act that made the guidelines mandatory. Following these decisions, the Supreme Court in *Gall v. U.S.*, 128 S. Ct. 586 (2007) (December 10, 2007) and in *Kimbrough v. U.S.*, 128 S. Ct. 558 (2007) (also decided December 10, 2007), the Supreme Court determined that there need not be a finding of "extraordinary circumstances" in order to justify the imposition of non-Guidelines sentences. *Gall*, 128 S. Ct. at 594-5. More importantly, the Supreme Court determined that a court of appeals may not apply a presumption of unreasonableness to non-Guidelines sentences, instead providing that appellate courts must give "due deference" to the sentencing judge's determination that factors enumerated in 18 U.S.C. § 3553(a) justify the sentence imposed. *Id.* at 596-7.

As explained in *Gall*, "the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however." *Id.* at 596. The district court judge should consider all of the factors in section 3553(a) "to determine whether they support the sentence requested by a party." *Id.* This requires the judge to make "an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is

warranted, he must consider the extent of the deviation and ensure that the justification is *sufficiently compelling* to support the degree of the variance." *Id.* at 596-7 (emphasis added).

As the Supreme Court described:

> Section 3553(a) lists seven factors that a sentencing court must consider. The first factor is a broad command to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." The second factor requires the consideration of the general purposes of sentencing, including:
>
> "the need for the sentence imposed --
>
> "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> "(B) to afford adequate deterrence to criminal conduct;
>
> "(C) to protect the public from further crimes of the defendant; and
>
> "(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."
>
> The third factor pertains to "the kinds of sentences available,"; the fourth to the Sentencing Guidelines; the fifth to any relevant policy statement issued by the Sentencing Commission; the sixth to "the need to avoid unwarranted sentence disparities,"; and the seventh to "the need to provide restitution to any victim,". Preceding this list is a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing described in the second factor. The fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.

*Id.* at 597 (internal citations omitted).

In the case at bar, Defendant requests this Court to consider the factors aligned in § 3553(a). An application of these factors cry out for a sentence outside the guideline range.

Taking the factors individually, even a cursory look at the nature of the offense and the history and character of Mr. Gray allows the court to impose a sentence outside the range. The nature of the offense for which Mr. Gray is convicted involves an effort to wire transfer funds.

While certainly not an excuse for criminal conduct, the offense was never fully carried out and none of the victims were subject to any monetary loss.

As to the history and characteristics of Mr. Gray, the Court through the probation officer has been provided with numerous letters extolling the good character of Mr. Gray. His history is that of a good and caring individual, an entrepreneur who has been involved in and has run a number of businesses with this particular instance being the only bump in the road. He is a very solid family man, very involved in his church, very involved in his community, and one who is spoken of as a man who reaches out to provide assistance to those in need.

Mr. Gray is surely a candidate for probation, house arrest, or at its extreme, some sort of split sentence. This is so because the conduct for which Mr. Gray was convicted is out of character. *See* Exhibit A, letters reflecting Cory Gray's character. It is a marked departure from his past conduct. There is an absence of any prior criminal conduct, there is virtually no likelihood that he will reoffend, and he has not subsequently been involved in any wrongful conduct. In fact, since Mr. Gray's conviction, he has pressed ahead, even opening a new business, Tax & Financial Solutions, which is the first tax business of its kind owned by an African American in the East Texas area. Such characteristics warrant the imposition of a sentence that is outside the Guidelines. *See Gall,* 128 S. Ct. at 592-3 (Where district court judge imposed a probation of 36 months, a departure from the presentence report which recommended a sentence of 30 - 35 months, based on the Guidelines. The Judge determined that "Defendant's post-offense conduct, especially obtaining a college degree and the start of his own successful business, the support of family and friends, lack of criminal history, and his age at the time of the offense... warrant the sentence imposed, which was sufficient, but not greater than necessary to serve the purposes of sentencing.").

As with the case of Mr. Gray, a sentence outside the Guidelines is similarly warranted. Mr. Gray was only twenty-six (26) years of age at the time of the offense. Prior to the incident, Mr. Gray had no prior criminal conduct but rather, had exhibited marked determination and character, having risen from a poor community to become a Division I track athlete at the

University of Oregon and the first member of his family to attend college. Moreover, Mr. Gray's post-offense conduct has been credible. He has re-focused his life and has forged ahead, starting a new business that offers an invaluable service to his community. A sentence outside the Guidelines is thus warranted given these factors. But for this one incident, Mr. Gray has exhibited an exemplary life and the potential to succeed.

In appropriate circumstances, and this is one, considering that even the Zones in the guidelines are now advisory, the Court can consider a higher split sentence than was previously allowable under Zone C of the guidelines. For example, if the Guidelines call for a 27-33 month range, and the Court determines that a non guideline sentence is appropriate, the Court could impose a sentence of twelve months, followed by a supervised release with a special condition of fifteen months home confinement. Or, alternatively, the Court could fashion a sentence allowing the Defendant to be placed on probation for time served followed by supervised release with a special condition of seven months in a halfway house, followed by eight months of home confinement. It does not stop there, this Court might even require that Mr. Gray provide some community service as a condition of his sentence.

### IV. APPLICATION OF USSG SECTION 5H1.6, FAMILY TIES AND RESPONSIBILITIES

If family responsibilities are to be considered, this Court should first apply the criteria set forth in Section 5H1.61(A). The Court should review the seriousness of the offense; whether any members of the Defendant's family are involved; and the danger, if any, to members of the Defendant's family as a result of the offense. While not minimizing the possible impact of bank fraud and identity theft on individuals who are victimized by these crimes, in the instant matter, the offense was not completed. Mr. Gray did not receive any money as a result of his involvement in the offense and the "target" or victim, fortunately, did not suffer an economic loss. Measuring this offense against other bank fraud and other identity theft-type crimes, this particular offense does not register as one of the more serious crimes. In addition, none of Mr. Gray's family members were involved in the offense and the offense itself presents no danger or hazard to any members of Defendant's family. If the process set out in Section 5H1.6 yields a positive result as it does here, the Court should then

proceed to Section 5H1.6(1)(B). This section sets out certain criteria for the Court to consider in assessing whether this case meets the standard for "departures" based on loss of caretaking or financial support. The following circumstances are required for the Court to consider a departure;

    (i)    The defendant's service of the sentence within the applicable guidelines range will cause a substantial, direct and specific loss of essential caretaking, or essential financial support, to the defendant's family.

    (ii)    The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.

    (iii)    The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to defendant's family.

    (iv)    The departure effectively will address the loss of caretaking or financial support.

As set out in this motion, Mr. Gray has long worked to assist in the support of his mother, his sister, and his aging grandfather. *See* Exhibit B, family photographs. There are now additional circumstances which we believe the Court should consider in fashioning an appropriate sentence for Mr. Gray. On Tuesday, June 3 2008, Mr. Gray informed defense counsel that his live-in girlfriend, Vel-Sh'Ron Ortiz, is pregnant. While Ms. Ortiz is presently employed in the Dallas-Fort Worth area, that will not be the case going forward. She is in her first trimester and will require assistance from Mr. Gray with prenatal care, along with the economic and other support associated with pregnancy. According to Mr. Gray and Ms. Ortiz, they met with Ms. Ortiz' physician, who informed them that because of certain pre-existing medical conditions, Ms. Ortiz should anticipate constant doctor's care in order to avoid, or at least minimize, complications which could cause the pregnancy to terminate.

As stated above, counsel first learned of Ms. Ortiz' pregnancy on June 3, 2008. The sentencing range for a level 18 offense is 27 to 33 months. However, the Court is not bound by the guidelines. *United States v. Booker*; and *United States v. Fanfan, supra*. In other words, it is

not mandatory that Mr. Gray be sentenced in the 27 to 33 month range, only that the Court consider that as a starting point. Does sentencing Mr. Gray to the range set out in the guidelines, cause a substantial, direct and specific loss of essential financial support to his family? That must be answered in the affirmative. Mr. Ortiz and Mr. Gray operate as a family. Aside from the fact that Mr. Gray's mother, sister, her son and his grandfather will be affected by the lengthy sentence of incarceration, Ms. Ortiz will suffer a significant impact as well. It is anticipated that during the course of Mrs. Ortiz' pregnancy, the complications being discussed with her physician will require her to stop working. The earlier Mr. Gray can complete any penalty of incarceration, the better it will be for Ms. Ortiz and their unborn child. Going forward, neither Mr. Gray's family nor Ms. Ortiz' family have the resources to provide the kind of prenatal care and medical assistance that she will need during the course of this pregnancy. If this Court were to depart downward allowing Mr. Gray to serve a sentence where he could provide both the emotional and economic support essential to Ms. Ortiz having a successful pregnancy, said departure would effectively address the loss of both caretaking and financial support. Because this Court is not hindered by a mandatory sentencing scheme, Mr. Gray and his counsel would urge this Court to consider a sentence that will allow for the government and society to see him punished for his role in the offense, and yet allow him the opportunity to provide that which is essential for his family. Such departures are not without precedent. As this Court is aware, departures are generally warranted where circumstances make "the case a-typical and take it out of the heartland for which the applicable guideline was designed."

This case does not fall within the heartland of cases for which the guidelines are most applicable. *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007). The defendant in this case, is a first time offender with no criminal record; there was no economic loss resulting from his crime, and he has displayed remorse at every step of the proceedings. The guidelines for this offense are designed to punish, more severely, those who actually complete the crime and deprive the victim of money. If Mr. Gray is sentenced within the guidelines, he would receive a sentence equivalent to that of a person who succeeded in transferring the money and then putting it to his own use.

SENTENCING MEMORANDUM (NO. CR 07-0717-CW)

In a similar case, the Ninth Circuit remanded a case where the District Court Judge failed to consider the absence of any criminal record on the part of the defendant, her having returned as repaid misappropriated funds and her remorse throughout the process. *See United States v. Paul*, 06-30506 (9th Cir. 2007).

Crafting a sentence that will allow Mr. Gray to serve a portion, if not all of his sentence on home arrest or in a community corrections center would be reasonable. If such a sentence were imposed, he would be available to Ms. Ortiz during her pregnancy to provide, not only the needed financial support, but, the emotional support so necessary when faced with a complicated pregnancy.

Defendant seeks, not to escape penalty, but, to have this Court impose a reasonable sentence taking into account the totality of the circumstances. If this Court either departs from the recommended guideline range or sentences Mr. Gray after applying Title 18 U.S.C. § 3553, Defendant believes a sentence that reflects his conduct will result. It is therefore requested that the Court consider not only § 3553, but § 5H1.6, as well.

### V. CONCLUSION

Mr. Gray respectfully urges this Court to sentence him outside the Federal Sentencing Guidelines and to impose the least restrictive sentence possible. Mr. Gray is not a criminal in any traditional sense but he will have to live out his life as a convicted felon. That in and of itself is a significant blow to someone who has worked as hard as he has to build a good reputation and for a person who has maintained an interest in types of professions that are prohibitive to those with felony convictions. Mr. Gray has a desire and plan to fulfill his last requirement toward earning a Bachelor of Arts degree in Sociology from the University of Oregon and he is incredibly aware of the consequences of his actions given the severity of his conduct. It is requested and recommended that this Court fashion a sentence for Mr. Gray that allows him the least possible period of incarceration and positions him to do what he has always done, that is, to work hard, nurture and care for his family, continue building his business, participate in his community, and become the first member of his family to earn a college degree. He is not asking this Court to absolve him of his criminal actions. He is asking only that the punishment imposed, fit the crime.

DATED: June 4, 2008.  GREENBERG TRAURIG, LLP


By: /s/ Booker T. Evans, Jr.
William J. Goines
Booker T. Evans, Jr.
Alisha M. Louie
Attorneys for Defendant Cory Deone Gray